**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                                                                    Case No. 2:16-CR-318 RB

JOSE LUIS CARMONA-GARCIA,

      Defendant.

<u>**MEMORANDUM OPINION AND ORDER**</u>

**THIS MATTER** is before the Court on Defendant Jose Luis Carmona-Garcia's Objection to Presentence Report and Request for Variance (Doc. 14). Having reviewed the parties' submissions and arguments, the Court **GRANTS** the objection and **GRANTS** the request for a variance.

**I.     BACKGROUND**

Jose Luis Carmona-Garcia is a Mexican citizen. (PSR ¶ 5.) Thirteen years ago, he was convicted of four counts of aggravated assault under Ga. Code. Ann. § 16-5-21 (2002) in Decatur, Georgia. (*Id.* at ¶ 22 (listing a 2003 conviction); Doc. 15-1 (alleging crime committed in 2002).) According to Mr. Carmona-Garcia, when he was 19-years old he was in a car with a gun and the gun accidentally discharged. (Apr. 21, 2016 Draft Hr'g. Tr. at 3; PSR ¶ 22; *see also* Doc. 14 at 10.) Mr. Carmona-Garcia was charged with aggravated assault against individuals near the car. (Apr. 21, 2016 Draft Hr'g. Tr. at 3.) He pled no contest and was sentenced to two years of custody for each count, which was reduced to 30 days for each count with each count to run concurrently. (Apr. 21, 2016 Draft Hr'g. Tr. at 3–4; PSR ¶ 22.) At some point, Mr. Carmona-Garcia's probation was revoked and he spent six months in custody. (PSR. ¶ 22.) Less

than a year later, the sentence was reduced to time served and Mr. Carmona-Garcia was deported. (*Id.* at ¶ 5.)

Mr. Carmona-Garcia has since made a life in Mexico.   The year he returned to Mexico, Mr. Carmona-Garcia married his wife.   (PSR ¶ 31.)   They had four children together, but two of his children have passed away.   (*Id.*)   Mr. Carmona-Garcia grows corn and beans for his family in Mexico and financially supports his wife, their two children, and his parents.   (*Id.* at ¶¶ 36, 56.) His situation came to a head when his two-year-old son developed a stone in his liver and the family could not afford to pay for his son's operation.   (*Id.* at ¶ 31; Doc. 14-1 at 2.)

Mr. Carmona-Garcia returned to the United States to send back money for his son's medical care, but the U.S. Border Patrol apprehended him in the New Mexico desert along the United States-Mexico border on November 20, 2015.   (*Id.* at ¶¶ 5, 31.)   He pled guilty to 8 U.S.C. § 1326(a)(2) for illegal reentry.   (*Id.* at 4.)   Based on Mr. Carmona-Garcia's previous conviction, the U.S. Probation office recommended a 12-level enhancement for a crime of violence pursuant to U.S. Sentencing Guidelines Manual (USSG) § 2L1.2(b)(1)(A)(ii).   (*Id.* at ¶ 11.)   However, the office further noted that a downward variance may be appropriate due to Mr. Carmona-Garcia's individual circumstances.   (PSR ¶¶ 56–57.)   Mr. Carmona-Garcia filed his Objection to Presentence Report and Request for Variance, asserting that the Georgia aggravated assault conviction does not qualify as a crime of violence and in the alternative requesting that the Court allow a downward variance to five months.   (Doc. 14 at 1.)

The Georgia aggravated assault conviction, pursuant to Ga. Code. Ann. § 16-5-21, does not qualify for the crime of violence enhancement pursuant to USSG § 2L1.2(b)(1)(A)(ii).   The Georgia aggravated assault statute lacks a sufficient intent element, which exists in both the generic aggravated assault provision and the provision for other laws with an element involving

"threatened use of physical force against the person of another." *See supra* Section III(a).

Additionally, the "serious bodily injury" element in the Georgia aggravated assault statute

encompasses more than the serious bodily injury element in the general aggravated assault

provision. *See supra* Section III(b).   Thus Mr. Carmona-Garcia's conviction does not qualify as

a crime of violence. *See supra* Section III(c).   The Court further grants a one-month downward

variance because of the age of the conviction, the forthcoming amendments to the guidelines, and

Mr. Carmona-Garcia's personal circumstances. *See supra* Section IV.   Finally, even if the

Georgia aggravated assault qualifies as a crime of violence, the Court grants a 19-month variance

for the same reasons. *See id.*

## II.    LEGAL STANDARD FOR OBJECTION TO ENHANCEMENT

Courts generally use the categorical approach to determine whether state laws qualify as

general laws listed in federal statutes and sentencing guidelines. *See, e.g*, *Descamps v. United*

*States*, 133 S. Ct. 2276, 2281 (2013) (Armed Career Criminal Act); *United States v. De La*

*Cruz-Garcia*, 590 F.3d 1157, 1159 (10th Cir. 2010) (USSG § 2L1.2).   Under the categorical

approach, courts ignore the actual facts of the conviction and instead compare the state crime with

the general crime or guideline. *See Descamps*, 133 S. Ct. at 2283.   Notably, the title of the statute

does not dictate the analysis. *United States v. Garcia-Caraveo*, 586 F.3d 1230, 1233 (10th Cir.

2009).   Instead, the elements of the state law must correspond with the elements of the "uniform

generic definition of the crime . . . ." *United States v. Garcia-Caraveo*, 586 F.3d 1230, 1233 (10th

Cir. 2009) (quoting *Taylor v. United States*, 495 U.S. 575, 589 (1990)); *Taylor*, 495 U.S. 598.

Courts determine the generic definition by examining state laws governing the offense and

"prominent secondary sources, such as criminal law treatises and the Model Penal Code." *Id.*

Courts then "presume that the conviction 'rested upon nothing more than the least of the acts'

criminalized [in the state statute], and . . . determine whether even those acts are encompassed by the generic federal offense." *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684 (2013) (quoting *Johnson v. United States*, 559 U.S. 122, 137 (2010)).

If a state law has alternate elements (or definitions), either of which establish conviction, courts use a modified categorical approach. *See Descamps*, 133 S.Ct. at 2283–84. Under the modified categorical approach, courts use specific documents, like the indictment, to identify which alternate definition was used to convict the offender and compare that definition with the elements in the general crime or guideline. *See id.* at 2281. Then, courts proceed in the same manner as the categorical approach. *Id.* at 2285.

## III.    DISCUSSION OF OBJECTION TO ENHANCEMENT

The guideline for a crime of violence under USSG § 2L1.2 includes two relevant definitions. First, state laws that prohibit "aggravated assault" are crimes of violence. USSG § 2L1.2 cmt. 1(B)(iii). Second, crimes of violence include "any other offense under . . . state . . . law that has as an element the use, attempted use, or threatened use of physical force against the person of another." *Id.*

These two definitions require either (1) intent beyond recklessness or (2) causation of serious bodily injury. "A person is guilty of [the generic crime for] aggravated assault if he: (a) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; or (b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon." Model Penal Code § 211.1(2); *see also United States v. Gastelum-Laurean*, 370 F. App'x 938, 941 (10th Cir. 2010) (relying on Model Penal Code); *United States v. Fierro-Reyna*, 466 F.3d 324, 329 (5th Cir. 2006) (same); *United States v. McFalls*, 592 F.3d 707, 717 (6th Cir.

2010) (same).   Conversely, the definition involving "the use, attempted use, or threatened use of physical force against the person of another" always requires that the defendant act more than recklessly.   *See United States v. Zuniga-Soto*, 527 F.3d 1110, 1124 (10th Cir. 2008) (determining an assault crime did not qualify because it included reckless use of force).   Thus, under either definition, any conviction for aggravated assault requires at least knowing intent or causation of serious bodily injury.

### A.  Intent Requirement

Whereas the intent requirement in the generic aggravated assault crime is clear, the intent requirement for an offense with an element of threatened use of force requires more subtle analysis.   The "use . . . of physical force" requirement in the USSG. § 2L1.2 definition "implies the active employment of force" and thus requires more than recklessness.   *Zuniga-Soto*, 527 F.3d 1110 at 1123–24 (quoting *Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004) (omissions in *Zuniga-Soto*); *see also Jobson v. Ashcroft*, 326 F.3d 367, 372–76 (2d Cir. 2003); *Oyebanji v. Gonzales*, 418 F.3d 260, 264–65 (3d Cir. 2005) (Alito, J.); *Bejarano–Urrutia v. Gonzales*, 413 F.3d 444, 447 (4th Cir. 2005); *United States v. Chapa–Garza*, 243 F.3d 921, 926 (5th Cir. 2001); *Bazan–Reyes v. INS*, 256 F.3d 600, 609–12 (7th Cir. 2001); *United States v. Torres–Villalobos*, 487 F.3d 607, 616 (8th Cir. 2007); *Fernandez–Ruiz v. Gonzales*, 466 F.3d 1121, 1130 (9th Cir. 2006) (en banc).   In *Zuniga-Soto*, the court noted that the Texas statute for assault on a civil servant would also hypothetically criminalize a "defendant's reckless behavior [with a car, which] led to an unintended collision with a uniformed police officer."   *Id.* at 1125.   The court determined that this hypothetical crime would not include an active use of force, namely the requisite knowing intent, and thus held that the Texas statute was too broad to qualify as a crime of violence.   *See id.*

Relatedly, courts distinguish between state statutes that prohibit "the *consequences* of the

conduct" from the guidelines, which "look to the *type* of conduct that causes the injury." *Zuniga-Soto*, 527 F.3d at 1125 n.3 (quoting *United States v. Perez-Vargas*, 414 F.3d 1282, 1285 (10th Cir. 2005)) (emphasis in *Zuniga-Soto*).   In other words, there is a difference between focusing "on the **result** of a defendant's conduct" and focusing "on the **means** by which an injury occurs . . . ."   *Perez-Vargas*, 414 F.3d at 1285 (emphasis in original).   Based on this discrepancy, the *Zuniga-Soto* court concluded that, "because [the Texas statute] permits convictions based on the mere causation of physical injury without proof of the use, attempted use, or threatened use of physical force, it does not qualify as a crime of violence under § 2L1.2's definition of that term."[1] *Zuniga-Soto*, 527 F.3d at 1125 n.3.   Similarly, the court in *Perez-Vargas* determined the state statute did not qualify as a crime of violence in part because it would prohibit actions such as "recklessly shooting a gun in the air to celebrate[,]" which would not have involved the necessary "threatened use of physical force . . . ."   *Perez-Vargas*, 414 F.3d at 1285.

Courts consider the law and precedent of the state to determine the state of mind required in a local statute.   *Johnson*, 559 U.S. at 138; *United States v. Santos-Santos*, 463 F. App'x 728, 731 (10th Cir. 2011).   In *United States v. Ramon Silva*, 608 F.3d 663 (10th Cir. 2010), the court looked at New Mexico law on intent to determine that a New Mexico aggravated assault statute constituted a crime of violence for the Armed Career Criminal Act.   The statute defines assault as "any unlawful act, threat or menacing conduct which causes another person to reasonably believe that he is in danger of receiving an immediate battery . . . ."   N.M. Stat. § 30-3-1 (1975).   The Court inquired into New Mexico case law to determine that "'[p]roof of general criminal intent is

---

[1] The court made this conclusion, but it did so in dicta.   The court held that the statute was not a crime of violence based on the analysis regarding intent, *see infra*, but subsequently commented on the defendant's alternative argument in a footnote, noting that it "raises a valid point" but it "need not decide" in the issue.   *Zuniga-Soto*, 527 F.3d at 1125 & n.3.

also a necessary element,' which the New Mexico Supreme Court defines as 'conscious wrongdoing or the purposeful doing of an act the law declares to be a crime[]'." *Ramon Silva*, 608 F.3d at 670 (quoting *State v. Bachicha*, 808 P.2d 51, 54 (N.M. Ct. App. 1991) and *State v. Campos*, 921 P.2d 1266, 1277 n.5 (N.M. 1996)). The court concluded that "'apprehension causing' aggravated assault in New Mexico includes as an element the threatened use of 'force capable of causing physical pain or injury to another person.'" *Id.* In support, the court quoted *United States v. Treto-Martinez*, 421 F.3d 1156, 1159 (10th Cir. 2005), which held: "Thus, a person who *intentionally* touches another with a deadly weapon in a 'rude, insulting or angry manner,' uses physical force by means of an instrument calculated or likely to produce bodily injury which goes well beyond other, less violent, forms of touching such as grabbing a police officer's arm." *Id.* (emphasis added in *Ramon Silva*).

The Georgia statute, though similar, differs from the New Mexico law in important aspects. Both the Georgia and New Mexico laws require only general intent, but Georgia, more specifically, only requires that the offender "intend to commit the act which in fact places another in reasonable apprehension of injury . . . ." *Adams v. State*, 667 S.E.2d 186, 190 (Ga. Ct. App. 2008) (quoting *Smith v. State*, 629 S.E.2d 816, 818 (Ga. 2006)).[2] This language is broader than

---

[2] Georgia's aggravated assault statute prohibits both attempted infliction of violent injury and acts that place another in reasonable apprehension of being injured. *See* Ga. Code. Ann. §§ 16-5-20, 16-5-21 (2002). Although attempted injury requires sufficient intent, the intent requirement for the reasonable apprehension definition is less clear. Mr. Carmona-Garcia's indictment does not specify which definition applies in his case. So, the Court must assess whether the intent requirement for aggravated assault based on reasonable apprehension sufficiently matches the intent requirement for crimes of violence. *See Moncrieffe*, 133 S. Ct. at 1684 ("We must presume that the conviction rested upon nothing more than the least of the acts criminalized, and then determine whether even those acts are encompassed by the generic federal offense."); *c.f. Zuniga-Soto*, 527 F.3d at 1122 ("[W]e see no evidence that [the defendant] was convicted under a part of the section 22.01 that excluded recklessness from its definition of assault. Therefore, we must include recklessness in our examination . . . .").

New Mexico's statute, which requires "conscious wrong doing" or an intentional unlawful act. *See Ramon Silva*, 608 F.3d at 670.   Case law confirms this distinction.   In Georgia, a conviction based on the victim's reasonable apprehension of fear can be based on criminal negligence or recklessness in causing that apprehension.   *Dryden v. State*, 676 S.E.2d 175, 176–77 (Ga. 2009) *overruled by State v. Springer*, 774 S.E.2d 106, 111 (Ga. 2015) (overruling *Dryden* but maintaining the intent distinction between assault by attempted injury and assault based on reasonable apprehension); *Montford v. State*, 564 S.E.2d 216, 218 (Ga. Ct. App. 2002).   In practice, Georgia confirmed a conviction because sufficient evidence existed to prove that the offender "intended to drive his vehicle rapidly through the parking lot" and caused the police officer to fear for his life.   *Adams*, 667 S.E.2d at 189.   Similarly, Georgia confirmed a conviction where a police officer "reasonably apprehended immediately receiving a violent injury when [the defendant] backed toward" the officer with a vehicle.   *Mackey v. State*, 675 S.E.2d 567, 570 & n.2 (Ga. Ct. App. 2009) (recognizing that "this same evidence would not have been sufficient to support an aggravated charge" under the intent to injure definition).

This difference becomes clearer by comparing the language of the two statutes.   Whereas the New Mexico statute explicitly prohibits "*any unlawful act, threat or menacing conduct*, which causes another person to reasonably believe that he is in danger of receiving an immediate battery[,]" N.M. Stat. § 30-3-1 (1975) (emphasis added), the Georgia statute prohibits "*an act* which places another in reasonable apprehension of immediately receiving a violent injury," Ga. Code. Ann. § 16-5-20 (2002) (emphasis added).   New Mexico's greater emphasis on the type of act more closely resembles the guidelines, which focus on "the *type* of conduct that causes the injury."   *Zuniga-Soto*, 527 F.3d at 1125 n.3.   Georgia, conversely, focuses on the consequence of the act, that a victim reasonably apprehends "immediately receiving a violent injury."   Ga. Code.

Ann. § 16-5-20.   Consequently, a person in Georgia could be convicted of aggravated assault for shooting a gun in the air in celebration, which, although reckless, would not involve "threatened use of physical force" necessary for USSG § 2L1.2.[3]   *See Perez-Vargas*, 414 F.3d at 1285.   As such, the Georgia statute does not qualify as a crime of violence.

Admittedly, three unpublished Fifth Circuit cases have concluded that convictions for aggravated assault under the reasonable apprehension prong constitute a crime of violence, but none of these cases contain sufficient analysis to persuade the Court.   In *United States v. Hyrtado*, the court merely "review[ed] the statute" and concluded "that any differences between the [apprehension definition] and the generic, contemporary definition of 'aggravated assault' are immaterial . . . ."   *United States v. Hyrtado*, 551 F. App'x 161, 162 (5th Cir. 2014).   The court failed to mention, let alone analyze, the intent requirement.   *See id.*   Similarly, the court in *United States v. Gonzalez-Flores* used a "common sense approach" and held that "the generic, contemporary meaning of the offense of aggravated assault includes the intentionally-caused apprehension of injury, . . .   and that [the defendant's] Georgia offense falls within that generic, contemporary meaning."   *United States v. Gonzalez-Flores*, 228 F. App'x 491 (5th Cir. 2007). The court failed to address how the Georgia apprehension definition required intent to cause apprehension or explain state precedent to the contrary.   *See id.*; *United States v. Soto-Romero*, 491 F. App'x 481, 482 (5th Cir. 2012) (holding same on plain error review).

Based on its own case law, Georgia's statute for aggravated assault does not always require

---

[3] Although the Court cannot consider the facts underlying Mr. Carmona-Garcia's conviction to determine whether those facts constitute a crime of violence, the Court notes that his asserted conduct provides an example of activity that would sustain a conviction under the Georgia statute but not qualify as a crime of violence.   If Mr. Carmona-Garcia intentionally picked up a gun, causing it to accidentally fire, his intentional act would cause reasonable apprehension, but would not constitute threatened use of physical force.

sufficient intent to qualify as a crime of violence under generic aggravated assault or USSG §

2L1.2's provision for threatened use of force. Cases that hold to the contrary fail to address

Georgia's more lenient intent requirement, which focuses on consequence of the act rather than

type of act. Thus, Mr. Carmona-Garcia's conviction does not qualify for the 12-level

enhancement pursuant to USSG § 2L1.2.

### B. Serious Bodily Injury Requirement

As discussed above, the generic definition of aggravated assault requires at least knowing

intent or causation of serious bodily injury. Model Penal Code § 211.1(2); *see also*

*Gastelum-Laurean*, 370 F.App'x at 940. In Georgia, conversely, the relevant aggravated assault

provision requires either assault "[w]ith a deadly weapon" or assault "with any object, device, or

instrument which, when used offensively against a person, is likely to or actually does result in

serious bodily injury . . . ." Ga. Code Ann. § 16-5-21. These elements don't match up.

Whereas the generic crime requires causation of serious bodily injury, Georgia requires reasonable

apprehension of harm with an object that "is likely to . . . result in serious bodily injury" when used

offensively against a person. *Id.*; Ga. Code Ann. § 16-5-20. The Georgia statute does not

require actual causation, and thus a conviction for violating Ga. Code Ann. § 16-5-21 does not

qualify as a crime of violence pursuant to the serious bodily injury definition.

### C. Conclusion under the Modified Categorical Approach

Mr. Carmona-Garcia's indictment does not qualify as a crime of violence because the

indictment does not specify the type of assault nor allege causation of serious bodily harm. For a

conviction to qualify as a crime of violence based on use of a deadly weapon, the offender must

either intend to cause injury or actually cause injury. *See* Model Penal Code § 211.1(2). For a

conviction to qualify as a crime of violence based on serious bodily injury, the offender must either

intend to cause injury or actually cause injury.   *See id.*   Mr. Carmona-Garcia's indictment alleges

neither intent nor causation and thus his conviction does not qualify as a crime of violence.

Instead, Mr. Carmona-Garcia's conviction qualifies for only a four level enhancement under

USSG § 2L1.2(b)(1)(D) as a "conviction for any other felony."   Consequently, Mr.

Carmona-Garcia's appropriate recommended sentence based on the guidelines is six to twelve

months.   *See* USSG § 2L1.2(b)(1)(D).   (*See also* PSR 4.)

## IV.    REQUEST FOR VARIANCE

Courts "shall impose a sentence sufficient, but not greater than necessary" to achieve the

statutory sentencing purposes.   18 U.S.C. § 3553(a).   The sentencing guidelines are "effectively

advisory[,]" and although courts must consider the guidelines, courts may "tailor the

[recommended guideline] sentence in light of other statutory concerns" in 18 U.S.C. § 3353(a)(1).

*United States v. Booker*, 543 U.S. 220, 245 (2005).   To determine the appropriate sentence, courts

shall consider: "(1) the nature and circumstances of the offense and the history and characteristics

of the defendant;" (2) the seriousness of the offense and just punishment; deterrence; protection of

the public; and rehabilitation; "(3) the kinds of sentences available;" (4) the sentencing range

recommended by the guidelines; (5) policy statements from the Sentencing Commission or law;

"(6) the need to avoid unwarranted sentence disparities among defendants"; and "(7) the need to

provide restitution to any victims of the offense."   18 U.S.C. § 3553.

Although the sentencing guidelines generally take these factors into account, this case

warrants a downward variance due to the nature and circumstances of the offense and the

characteristics of the defendant, the sentencing range recommended by the guidelines, and the

need to avoid unwarranted sentence disparities.   Thus, the Court grants a one-month downward

variance for a sentence of time served, and if Mr. Carmona-Garcia's conviction qualifies as a

crime of violence, the Court grants a 19-month downward variance based on the factors discussed

below.

### A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The guidelines recommend an additional 12 to 24 months because of Mr.

Carmona-Garcia's one previous conviction for aggravated assault under Ga. Code Ann. § 16-5-21.

(*See* PSR 4.)   Mr. Carmona-Garcia committed this crime almost fourteen years ago, when he was

19 years old.   (Doc. 15-1; PSR ¶ 22.)   Once Mr. Carmona-Garcia was deported, he did not return

to the United States for almost ten years.   (*See* PSR 1, 5 ¶ 25.)   In the meantime, Mr.

Carmona-Garcia made a life with his family in Mexico.   (PSR ¶ 31.)   He only returned because

he lacked money to pay for surgery for his two-year-old son.   (Doc. 14-1 at 2.)   The Court finds it

necessary to make allowance for the staleness of this conviction and Mr. Carmona-Garcia's

non-violent, non-criminal rationale for the current offense.   *C.f. United States v.

Amezcua-Vasquez*, 567 F.3d 1050, 1054–55 (9th Cir. 2009) ("[T]he district court abused its

discretion when it applied the Guidelines sentence [based on a 16-level increase] to [the defendant]

without making allowances for the staleness of the prior conviction and his subsequent lack of any

other convictions for violent crimes.").

### B. The Sentencing Range Recommended by the Guidelines

Although the current guidelines recommend a six to 12 month sentence (or a 24 to 30

month sentence if Mr. Carmona-Garcia's previous conviction is a crime of violence), the

Sentencing Commission's forthcoming amended guidelines would recommend a sentence of zero

to six months.   United States Sentencing Commission, *Amendments to the Sentencing Guidelines

(Preliminary)* at ii (Apr. 15, 2016) [hereinafter *Amendments*].   (*See also* Doc. 14-2; PSR 4.)   The

new guidelines, which will take effect on November 1, 2016 absent congressional action to the contrary, provide smaller enhancements for crimes committed prior to deportation and restrict enhancements to convictions that qualify for criminal history points. *See Amendments* 7, 14. The Sentencing Commission made these changes "to lessen the emphasis on pre-deportation convictions" and instead focus more on post-reentry convictions. *Id.* at 7. Mr. Carmona-Garcia's conviction occurred before he was deported and it does not qualify for criminal history points because it is too old. (*See* PSR ¶ 23.) The Court finds it noteworthy that the Sentencing Commission has amended its guidelines to de-emphasize older, pre-conviction crimes and thus the Court varies from the existing guidelines accordingly. *C.f. United States v. Campbell*, 967 F.2d 20, 27 (2d Cir. 1992) (determining that an upward variance was reasonable in part because the Sentencing Commission subsequently amended its guidelines to enhance the penalty).

### C.  The Need to Avoid Unwarranted Sentence Disparities

As other courts recognize, "there is already substantial disparity in sentencing in unlawful re-entry" and such a disparity is not necessarily "*unwarranted*." *United States v. Garcia-Jaquez*, 807 F. Supp. 2d 1005, 1016 (D. Colo. 2011) (emphasis in original). In fact, the Sentencing Commission amended the guidelines to address this exact issue. *See* United States Sentencing Commission, *Illegal Reentry Offenses* 11 (2015) (noting that, in 2013, the overall within-range rate was 55.6 percent and only 21.2 percent for offenders who received a 12-level enhancement). Consequently, the Court will follow the forthcoming amended guidelines because they seek to remedy this sentencing disparity.

### V.    CONCLUSION

Mr. Carmona-Garcia's previous conviction for violating Ga. Code. Ann. § 16-5-21 does

not qualify as a crime of violence.   Additionally, the Court provides a downward variance of one month to reflect the staleness of Mr. Carmona-Garcia's conviction, his history and characteristics, and the forthcoming amended guidelines.   Alternatively, if Mr. Carmona-Garcia's previous conviction qualifies as a crime of violence, the Court finds it is reasonable to grant a 19-month variance to address these same factors.

**THEREFORE**,

**IT IS ORDERED** that Mr. Carmona-Garcia's Objections to the Presentence Report and Request for Variance (Doc. 14) is **GRANTED**.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**